Jeff Dominic Price  |  SBN 165534
2500 Broadway, Suite 125
Santa Monica, California 90404
jeff.price@icloud.com
Tel. 310.451.2222

Attorney for the plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| TAMALA BEMIS, | No. 6: |
| Plaintiff, | COMPLAINT |
| vs. | 1.  42 U.S.C. § 1983; Unlawful Search and Seizure |
| CITY OF EUGENE, OFFICER BRAD HANNEMAN, NO. 622, and TEN UNKNOWN NAMED DEFENDANTS ["DOES" 1-10], inclusive, | 2.  42 U.S.C. § 1983; Taking, Fifth Amendment |
| | 3.  42 U.S.C. § 1983 *Monell* Liability |
| Defendants. | 4.  Oregon Tort Claims Act: Negligence |
| | DEMAND FOR JURY TRIAL |

I.    JURISDICTION AND VENUE

1.    This action is brought by Plaintiff Tamala Bemis for redress for deprivations of constitutional rights under 42 U.S.C. § 1983 *et seq.* and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has jurisdiction to issue declaratory or injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

2.    Plaintiff was within this district and within the jurisdiction of the United States of America at times herein alleged, making venue in this district proper according to 28 U.S.C. § 1391.

II.    INTRODUCTION

3.    This case arises after the death of the plaintiff's dog, Magic, an unnecessary and shameful event that resulted from the callous conduct engaged in by the defendants.

III.    PARTIES

4.    Plaintiff Tamala Bemis was a resident of the City of Eugene, within the jurisdiction of the United States of America, at all times herein alleged.

5.    Defendant Officer Brad Hanneman was at all material times employed by the defendant, City of Eugene [City] within the Eugene Police Department [EPD], and his badge number is believed to be 622, the badge number of the arresting officer.

6.    The EPD and City are governmental entities.

7.    Defendant City was an incorporated association and Oregon governmental entity and EPD was at all times an unincorporated association and or an Oregon governmental entity and both were charged with and responsible for appointing and promoting, the employees of the City, and for the supervision, training, instruction, discipline, control and conduct of said employees. At all times alleged herein defendant EPD had the power, right and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the Oregon Constitution, the laws of the United States, the laws of the State of Oregon, and the laws of the municipality.

8.    Plaintiff is ignorant of the true names and capacities of those defendants named as Unknown Named Defendants or "Does" and will amend this complaint to allege the true names and capacities of said defendants when they become known.

9.    Each and every defendant who is a natural person is sued in both his/her individual/personal capacity, as well as in his/her official capacity and/or supervisory capacity if he/she had any policymaking or supervisory duties, functions, or responsibilities with respect to the matters alleged.

IV.    FACTS

10.    In the early morning hours of October 5, 2015, Ms. Bemis was walking on a public sidewalk in Eugene, Oregon.

11.    Defendant Officer Brad Hanneman and Defendant Doe 1 (the "defendant officers," which, when necessary refers to both or either one of the two officers, Defendant Hanneman and Defendant Doe 1) stopped Ms. Bemis as she was merely walking on a public sidewalk.

12.    The defendant officers were attired in full EPD uniform with insignias, and were equipped with firearms, and were operating a marked police vehicle.

13.    Ms. Bemis did not voluntarily encounter or approach the defendant officers to speak with them.

14.    At the time of the stop the defendant officers were unaware of any crime that had recently been committed in the vicinity of the stop and were unaware of any crime in progress or that was about to be committed in the vicinity.

15.    Ms. Bemis did not consent to the stop.

16.    The defendant officers nevertheless impeded Ms. Bemis and began interrogating her.

17.    The defendant officers conducted their interrogation of Ms. Bemis in an authoritative and officious manner.

18.    During the interrogation of Ms. Bemis, she acted in a cooperative fashion and her behavior was not suspicious.

19.    The defendant officers did not know Ms. Bemis.

20.    At the time of the stop, Ms. Bemis was acting in a legal manner and

was not intoxicated.

21.     At the time of the stop, Ms. Bemis was not, nor had she been, committing any crime or infraction, or breaking any law or City ordinance by her actions, nor was she suspected of doing so.

22.     At the time of the stop, Ms. Bemis did not have a weapon and was not a danger to anyone including herself.

23.     At the time of the stop, the defendant officers were not investigating a crime in progress, recently committed, or about to be committed.

24.     At the time of the stop, neither of the defendant officers possessed reasonable suspicion that Ms. Bemis was involved in criminal activity or other conduct justifying investigation.

25.     The defendant officers directed Ms. Bemis to wait while they ran a warrant check on her.

26.     The defendant officers did not advise Ms. Bemis that she was free to leave.

27.     Ms. Bemis was not aware and did not believe that she was free to leave.

28.     The defendant officers detained Ms. Bemis for a period of time well beyond the initial questioning.

29.     The defendant officers ran a warrant check on Ms. Bemis for no reason other than that they had the capability to do so.

30.     After detaining Ms. Bemis and checking for outstanding warrants, the defendant officers or one of them informed Ms. Bemis that she had warrants for her arrest (traffic tickets).

31.     Defendant Hanneman arrested Ms. Bemis, handcuffed her and put her in the back seat of a police unit.

32.     Prior to being placed in the police unit, Ms. Bemis was searched in her pockets and belongings in a manner which she found to be highly offensive.

33.     The police unit in which Ms. Bemis was placed had an interior video camera which captured approximately 40 minutes of video and audio of Ms. Bemis in the back seat and her actions with defendant officers. (**Exhibit 1, attached.**)

34.     Prior to the stop, Ms. Bemis had parked her car nearby and her constant canine companion, Magic, a Red Heeler, was in her car.

35.     Ms. Bemis immediately became worried about her dog, Magic, and asked the defendant officers and other police officers several times to get Magic out of the car so that Magic would not die or be injured due to overheating or lack of food or water. Some pertinent parts of the video **(Exhibit 1)** include:

3:23:19     Video started.

3:24:36     Ms. Bemis is placed into the police unit in handcuffs.

3:30:14     Ms. Bemis is asked about a person she was with.

3:31:13     Ms. Bemis tells Defendant Hanneman that Magic is in her parked car in a man's backyard, that it was going to be too hot for Magic in the car, and that the windows were rolled up all the way.

3:34:50     Ms. Bemis is taken out of the Eugene police unit.

3:35:02     Ms. Bemis is introduced to another Eugene Defendant Doe 3, believes he was a Sergeant, but cannot understand his name.

3:37:30     Ms. Bemis is put back in the Eugene police unit.

3:43:36     Ms. Bemis again tells Defendant Hanneman about Magic and asks if officers could contact Ms. Bemis' brother about Magic in her car.

3:44:34     Ms. Bemis provides a make, model and description of car and tells Defendant Hanneman that the car was at the dead end of the street on the right.

3:51:10     Ms. Bemis tells Defendant Doe that her mom could not take collect calls and Ms. Bemis had no way to reach anyone about Magic.

3:53:15     Ms. Bemis again tells Defendant Hanneman where her car is

located.

4:02:05     Ms. Bemis asks Defendant Hanneman if the police located the car with Magic.

4:02:30     Defendant Doe asks Ms. Bemis for a phone number to call someone but she could not recall a number (very common in today's cell phone society).

4:03:33     Video ends.

36.    Despite the repeated requests by Ms. Bemis to locate her car and remove Magic, the Defendants did not do so.

37.    During much of the time recorded on the video the defendant officers or one of them was driving Ms. Bemis in the Eugene area and stopped at an intermediate location before taking Ms. Bemis to jail.

38.    Additionally, Ms. Bemis repeated her requests to save Magic after the period of time shown on the video, however, these requests also fell upon deaf ears.

39.    Ms. Bemis was kept at the Eugene jail for several days.

40.    The Eugene jail did not provide telephone directories or telephone numbers or have a way for inmates to find out phone numbers of individuals and Ms. Bemis was unable to call anyone to save Magic.

41.    Further requests by Ms. Bemis to save Magic at the Eugene jail fell upon deaf ears.

42.    Upon Ms. Bemis' release from the Eugene jail, she immediately went to her car and found Magic deceased.

43.    That Magic died was extremely distressing to Ms. Bemis as Magic was her constant companion.

44.    That Magic died in such a cruel fashion, alone, without water, and in extreme heat, haunts her to this very day.

45.    Ms. Bemis loved Magic and Magic's needless death has left Ms. Bemis

with great remorse and shame.

46.     Immediately after discovering Magic's death, Ms. Bemis contacted the EPD by phone and in person and complained about the events.

47.     After Ms. Bemis complained about the death of Magic, EPD Captain Sam Kamkar offered Ms. Bemis a check for $700 from Eugene, Oregon, to settle the matter of the death of Magic and all other matters related to Ms. Bemis's detention.

48.     Captain Kamkar presented Ms. Bemis with a release of liability to sign but did not give Ms. Bemis a copy of the release to review.

49.     Ms. Bemis refused the $700 check and did not sign any release.

50.     As a result of the defendants' conduct, which was perpetrated intentionally, recklessly, fraudulently, wantonly, fraudulently, oppressively, and or with reckless disregard for the rights of Plaintiff and others, and which is so despicable that it is despised by ordinary people, Plaintiff suffered all of the damages mentioned herein, including humiliation, fear, feelings of degradation and helplessness, sleeplessness, anguish, despair, fright, severe mental and emotional distress, depression, distrust, and embarrassment in violation of her federal constitutional rights and her rights under the laws of the State of Oregon, and Plaintiff is entitled to punitive damages.

51.     All Defendants acted without authorization of law.

52.     Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each defendant ratified, approved and acquiesced in the violations alleged herein.

53.     As joint actors with joint obligations, each defendant was and is responsible for the failures and omissions of the other.

54.     By reason of the above described acts and omissions of defendants,

Plaintiff was required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiff that she might vindicate the loss and impairment of her rights, and by reason thereof, Plaintiff requests payment by defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. § 1988.

V.    GENERAL ALLEGATIONS

55.    Each of the defendants was the agent and/or employee and/or co-conspirator of each of the remaining defendants, and in doing the things alleged here, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-defendants.

56.    Plaintiff alleges that the defendant officers acted in accordance with orders given by supervisors from the highest command positions, in accordance with policies and procedures instituted by the EPD and the City.

57.    As a direct and proximate cause of the conduct described herein, Plaintiff has been deprived of her constitutional, statutory and legal rights as stated herein and has suffered general and special damages, including mental and emotional distress, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, discomfort, harm to reputation, and apprehension, and other damages in an amount according to proof.

VI.    CLAIMS FOR RELIEF

Claim for Relief No. 1

Deprivation of Constitutional Rights – Fourth/Fourteenth Amendments – Unlawful Search and Seizure - 42 U.S.C. § 1983

By Plaintiff against all EPD Individual Defendants

58.    Plaintiff realleges and incorporate here the preceding paragraphs and any subsequent paragraphs of this Complaint.

59.    At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both

Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, and under Amendment IV to freedom from unreasonable search and seizure, were in force and effect and the individual defendants who subjected Plaintiff to the deprivation of liberty and property and who stopped Plaintiff Tamala Bemis without reasonable suspicion to believe she was engaged in criminal activity or other conduct justifying investigation and prolonged the stop, detained her for unrelated checks exceeding the time needed to handle the matter for which the stop was made, and arrested her and thereby subjected her to unlawful search and seizure on October 5, 2015, deprived Plaintiff of her constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution, which caused the injuries to Plaintiff.

<u>Claim for Relief No. 2</u>

<u>Deprivation of Constitutional Rights - Fifth/Fourteenth Amendments – Violation of</u>

<u>Due Process (Deprivation of Property without Due Process) - 42 U.S.C. § 1983</u>

<u>By Plaintiff against all EPD Individual Defendants</u>

60.    Plaintiff realleges and incorporate here the preceding paragraphs and any subsequent paragraphs of this Complaint.

61.    At the time of the Incidents set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws, were in force and effect and the individual defendants who engaged in the arbitrary and conscience-shocking conduct by stopping Plaintiff and subjecting Plaintiff to a taking of her property, to wit, her dog, Magic, deprived Plaintiff of her constitutional rights, which violated those rights, violated the fourteenth amendment to the United States Constitution, which caused the injuries to Plaintiff.

Claim for Relief No. 3

Deprivation of Constitutional Rights – Fourth/Fifth/Fourteenth Amendments –

Violation Right to be free from Unreasonable Seizure and Due Process (Deprivation

of Property without Due Process) - *Monell/Municipal Liability*

Against any and all *Monell* Defendants

62.     Plaintiffs re-allege and incorporate here the preceding paragraphs and any subsequent paragraphs of this Complaint.

63.     At the time of the Incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment V and XIV to the United States Constitution to due process of law and the equal protection of the laws and under Amendment IV to be free from unreasonable searches and seizures were in force and effect and the individual defendants who engaged in the conduct, as set forth above, who subjected Plaintiff to the deprivation of liberty and property, deprived Plaintiff of her constitutional rights, which violated those rights, violated the Fourth and Fourteenth Amendments to the United States Constitution, which proximately caused injuries to Plaintiff.

64.     Defendants violated Plaintiff's constitutional rights by creating and maintaining, among other things, the following unconstitutional customs and practices, inter alia:

65.     Defendant City and EPD implemented an official policy, de facto policy, or an unwritten official policy of, by act or omission, failing to in any way assist arrestees in caring for their animals, pets, or livestock from neglect or harm as a result of their being left without the care of their caretaker.

66.     Defendant City and EPD implemented a widespread or longstanding practice or custom of, by act or omission, failing to in any way assist arrestees in caring for their animals, pets, or livestock from neglect or harm as a result of their being left without the care of their caretaker.

67.     Defendants City and EPD lacked an official policy, de facto policy, or unwritten policy to in any way assist arrestees in caring for their animals, pets, or livestock from neglect or harm as a result of their being left without the care of their caretaker.

68.     In this case it was Defendant City's and EPD's official policy, de facto policy, or an unwritten official policy of, by act or omission, failing to in any way assist arrestees in caring for their animals, pets, or livestock from neglect or harm as a result of their being left without the care of their caretaker that caused the deprivation of plaintiff's rights by the defendants; that is the Defendants City's and EPD's official policy, de facto policy, or an unwritten official policy is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

69.     In this case it was Defendant City's and EPD's widespread or longstanding practice or custom of, by act or omission, failing to in any way assist arrestees in caring for their animals, pets, or livestock from neglect or harm as a result of their being left without the care of their caretaker that caused the deprivation of plaintiff's rights by the defendants; that is the Defendants City's and/or EPD's widespread or longstanding practice or custom is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

70.     In this case it was Defendant City's and EPD's lack of an official policy, de facto policy, or unwritten policy of, by act or omission, failing to in any way assist arrestees in caring for their animals, pets, or livestock and to protect them from neglect or harm as a result of their being left without the care of their caretaker that caused the deprivation of plaintiff's rights by the defendants; that is the Defendants City's and EPD's lack of an official policy, de facto policy, or unwritten policy is so closely related to the deprivation of the plaintiff's rights as to be the

moving force that caused the ultimate injury.

71.    Defendant City's and EPD's policy, custom, practices or lack thereof, as described herein, were within the control of Defendants City and EPD and within the feasibility of Defendants City and EPD to alter, adjust and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

Claim for Relief No. 4

Oregon Tort Claims Act -- Negligence

By Plaintiff against all Defendants

72.    Plaintiff realleges and incorporates here the preceding paragraphs and any subsequent paragraphs of this Complaint.

73.    At the time of the arrest of Ms. Bemis, Defendants knew or should have known that Ms. Bemis' dog Magic had been left by Ms. Bemis in her parked car with the windows up.

74.    Defendants knew or should have known that Magic, without the intervention of Ms. Bemis or another caretaker, would suffer from lack of water and food, and be exposed to extreme heat, which the dog would not survive.

75.    Defendants had a duty of care to Ms. Bemis, which extended to her dog, while she was in their custody.

76.    Defendants breached that duty by failing to assist Ms. Bemis in caring for her pet, Magic, and failing to protect Magic from neglect or harm as a result of being left without care.

77.    Defendants' actions, or failure to act, were the actual and proximate cause of the death of Ms. Bemis' pet, Magic.

78.    As a result of defendants' conduct, which fell below the standard of care, Ms. Bemis' pet, Magic, suffered from lack of water and food, extreme heat exposure, and ultimately died while Ms. Bemis was in the custody of defendants.

79.    As a result of defendants' conduct, which fell below the standard of care, Ms. Bemis' lost the companionship and love of her dog Magic.

VII.    REQUEST FOR RELIEF

Plaintiff seeks judgment as follows:

1.    A declaratory judgment that Defendants' conduct detailed herein was a violation of the rights of the Plaintiff and the class members under the Constitution and laws of the United States;

2.    General, special and compensatory damages for Plaintiff for the violations of her federal constitutional rights and for her claims under the common law, all to be determined according to proof;

3.    An award of punitive and exemplary damages against the individual Defendants to be determined according to proof;

4.    An award of attorneys' fees pursuant to 42 U.S.C. § 1988;

5.    Costs of suit;

6.    Pre- and post-judgment interest as permitted by law;

7.    Such other and further relief as the Court may deem just and proper.

DATED: October  4 , 2017                     Jeff Dominic Price

                                   By    ___/s/ Jeff Dominic Price___
                                         Jeff Dominic Price, Esq.
                                         Attorney for Plaintiff

DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs requests a jury trial on all issues and claims triable to a jury.

                                   By    ___/s/ Jeff Dominic Price___
                                         Jeff Dominic Price, Esq.
                                         Attorney for Plaintiff